## Allensworth v. Allensworth's Executrix.

(Decided March 27, 1931.)

C. H. BUSH, HUBERT MEREDITH and JOHN H. GILLIAM for appellant.

BREATHITT & BREATHITT and JAMES B. ALLENSWORTH for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Mrs. Carolyn Allensworth has appealed from a judgment dismissing her petition in an action against Mrs. Jessie O'Neal, as executrix of Philipp H. Allensworth, by which she sought to impress a trust upon certain money in the hands of the latter. The fund claimed is represented by this note:

"10,000.00.

"Twelve (12) months after date, I promise to pay to the order of P. H. Allensworth, the sum of Ten Thousand Dollars, with six per cent interest thereon from date hereof until paid, which interest is to be paid on the 1st day of August, 1923, and semiannually thereafter, and if not so paid same is to become principal and bear interest as such, and which shall be true after maturity, as well as before.

"This note is this day executed as a part of the purchase price for a tract of land conveyed to me by Lelia S. Sallee, Executrix of P. C. Sallee, de'd, and the same is secured by a vendor's lien retained in said deed, which was this day lodged for record in the Clerk's office of the Christian County Court, and which deed is now referred to, and all of the provisions and stipulations therein contained are

made a part hereof as fully as though written at length herein.

"This February 1st, 1923.

$2.00 Revenue stamps affixed.

[Signed] John F. Allensworth."

This note was given as a part of the consideration for certain property in and near the city of Hopkinsville, Ky., and is now the only lien against that property. Philipp H. Allensworth died September 10, 1924. Aside from a few small special bequests, Philpp H. Allensworth devised his estate to Jessie O'Neal for life, and after her death to John F. Allensworth and James B. Allensworth for life, then to the survivor of these for life, with remainder to certain nieces and nephews. He made this provision regarding this $10,000 note:

"I hold a note for Ten Thousand ($10,000.00) Dollars, against my brother John F. Allensworth which is secured by a lien on the tract of land situated near the City of Hopkinsville, Ky., and which was purchased by my said brother from Mrs. P. C. Sallee. Now it is my will and I so devise that the said John F. Allensworth shall have the use of said Ten Thousand Dollars, for and during his natural life, free from any interest charge, and that at his death said Ten Thousand Dollar note shall be collected by my said executor or executrix and be added to my estate to be distributed as provided in my original will. Said executor or executrix shall collect no interest on said note up to the death of my brother, John F. Allensworth."

He named John F. Allensworth and Jessie O'Neal as executor and executrix of his will. They qualified, both acted until the death of John on July 4, 1926, and Mrs. O'Neal has been acting since. John F. Allensworth in his will, after directing that his debts be paid, made this provision:

"I give, devise and bequeath all of the rest and residue of my property of every kind and description, wheresoever the same may be situated, to my wife, Carolyn W. Allensworth, absolutely, in fee simple and without reservation."

On October 29, 1926, Mrs. O'Neal, as executrix of Philipp H. Allensworth, verified this $10,000 note as

required by section 3870 of Ky. Stats., and demanded payment thereof from the executor of John F. Allensworth. It was not paid, and Mrs. O'Neal was preparing to sue upon it, when, on March 28th, Mrs. Carloyn W. Allensworth filed this action against Mrs. O'Neal, as executrix of Philipp H. Allensworth, and Douglas Bell, as executor of John F. Allensworth, alleging in her petition:

"The plaintiff, Mrs. Carolyn W. Allensworth, states that prior to the times herein complained of she and J. F. Allensworth, now deceased, her husband, were living together in Evansville, Indiana; that they owned their home in said city and were surrounded by their neighbors, friends and associates and were pleasantly situated and attached to their home surroundings and friends in said vicinity and that the said J. F. Allensworth was regularly engaged by the International Harvester Company at a salary of $400.00 per month and had been with said company for a long time. Not only were they pleasantly situated, but they were prosperous and were accumulating and saving some money year by year and were in a situation to earn a competency for their old age.

"She states that whilst they were circumstanced as above set forth and during the fall of the year 1922 her said husband's brother, one P. H. Allensworth, a bachelor, who lived in Christian County, Kentucky, and was wealthy and owned large interests in said county became broken in health and visited them in their home in Evansville, and sought to induce her said husband, J. F. Allensworth, and her to sell out their property and interests in Evansville, give up the job with the International Harvester Co., and remove to Christian County so that the said J. F. Allensworth could assist him, the said P. H. Allensworth, in the management of his property and the property of his widowed sister, the defendant, Mrs. Jessie O'Neal, which the said P. H. Allensworth was then assisting her to manage.

"After considerable discussion of the matter it was finally agreed by and between this plaintiff and her said husband on the one hand and the said P. H. Allensworth on the other hand that her said husband

would resign his position with the International Harvester Company, give up his salary of $400.00 per month, that she and her husband would sell their home in Evansville and remove to Christian County and that her husband would assist the said P. H. Allensworth whose health was broken in the management of his estates, property and business and the business of their widowed sister, Mrs. Jessie O'Neal, which was then managed by the said P. H. Allensworth, and that at the death of the said P. H. Allensworth, the said J. F. Allensworth would be made executor of his will and continue to manage or at least assist in the management of his estate, and that in consideration of the foregoing the said P. H. Allensworth, agreed, obligated and bound himself to advance the said J. F. Allensworth and this plaintiff the sum of Ten Thousand ($10,000.00) Dollars on the purchase of a certain home and properties known as the Sallee place and further agreed and bound himself to allow the said J. F. Allensworth to have said $10,000.00 and the use thereof for and during his natural life without the payment of any interest and that in the event the said J. F. Allensworth should be survived by his wife, this plaintiff, then and in such event the plaintiff should have said $10,000.00 absolutely and forever and the said P. H. Allensworth agreed, bound and obligated himself to provide for all of the foregoing benefits to her and to her said husband in his last will and testament.''

She made such further allegations as to show she and her husband had fully complied with their part of this agreement, that she did not know until after the death of John F. Allensworth that Philipp H. Allensworth had not in his will made provision that the $10,000 represented by this note should be hers after the death of John F. Allensworth, and she sought to impress upon this $10,000 a trust for her benefit.

By answer Mrs. O'Neal categorically denied the petition, and by cross-petition set up this note and asked that the lien to secure it be enforced and the land sold for the payment of it.

In the evidence there is no dispute of much that is contained in the petition, but there is a sharp denial that John F. Allensworth severed his connection with the

International Harvester Company at the instance or request of Philipp H. Allensworth, that he was to or did render any service to Philipp or that Philipp ever contracted to let him have this $10,000 without interest, or agreed to devise it to Carolyn W. Allensworth in event she survived both Philipp and John. Mrs. O'Neal's position is this, that John had lost his position with the International Harvester Company, was unable to get another, and Philipp, in order to help him solve his difficulties, loaned him $10,000 upon which John was never able to pay the interest, and that out of his generosity Philipp forgave him that interest and directed no interest should be charged on this note so long as he lived. John McCarley testified Philipp told him he had put up $10,000 for John on the Sallee place, and that this money should be John's as long as he lived, and should be his wife's as long as she lived. Later he was recalled and changed his last statement, and said that he meant to say this should belong to John's wife absolutely. Miss Messick testified she lived in an adjoining house to John Allensworth in Evansville, and that one evening in the fall of 1922 she and her mother were called over there and Philipp told them he wanted them to witness an agreement; that his health was bad, and he wanted John to come to Hopkinsville and help look after him and his business and that of Mrs. O'Neal, and that, if he would resign his position and do so, he would put up $10,000 on the Sallee place near Hopkinsville, and *that place* should be John's as long as he lived, and, if his wife survived him, it would be hers absolutely, and he promised to put that in his will, and that no interest was to be charged on the note that was to be given for this money. Miss Messick's mother died in June, 1927, before this evidence was taken. Miss Sadie Smith, a sister of Carolyn W. Allensworth, was out in town, but came home later that evening, and she testifies that on the next morning Philipp told her of this agreement, that Miss Messick and her mother had witnessed it, and she states this agreement practically the same as Miss Messick stated it, except she used the pronoun *it* at the place where Miss Messick used the expression *that place*.

D. W. Hanberry, a rural mail carrier, testified he met Philipp at John F. Allensworth's mail box one day in the spring of 1923, they got into a general conversation, and Philipp stated to him that John had bought the

place and as an inductment to get him to do so he had put $10,000 into the place, for his benefit as long as he lived, and, should Carrie survive him, it was to go to her in toto, absolutely to be hers.

Walter Bell, a colored man, testified he lived on this place, and, when Mrs. Sallee left, Philipp hired him for John. He and his wife were cleaning up the back yard in the latter part of March, and he asked Philipp if John was coming, and said to him,

"It is getting up in the year and if he is not coming we want to go somewhere else." Philipp said: " 'Yes, they are coming down here because,' he said, 'I have put $10,000.00 in this place for my brother, John; if your brother was to put that much money in a place for you, wouldn't you go?' I said, 'Yes, I would be glad to go for that much money.' He said, 'It is John's as long as he lives, and if he dies, it will be his wife's absolutely.' " His wife Lucy Bell, makes the same statement.

Mr. R. B. Webster testified he formerly worked for the International Harvester Company, under John F. Allensworth, that one evening some time in the later part of November, 1922, he and his wife called on Mr. and Mrs. John F. Allensworth, and Philipp was there. During their visit they talked about John moving to Hopkinsville and Philipp said:

"He said Mr. and Mrs. Allensworth had agreed for Mr. Allensworth to give up his position with the International Harvester Company, and offer his home for sale, and go to Hopkinsville to live, and that he had agreed to put $10,000.00 in the Sallee home near Hopkinsville, and that would be J. F. Allensworth's during his life time, and at his death it would be Mrs. Allensworth's absolutely."

Many of the witnesses refer to Philipp H. Allensworth as "Ip" or "Mr. Ip" and this is taken from the evidence of this witness.

"Q. Did he say anything about a note in that convresation? A. Yes, he said J. F. Allensworth was giving him a note; the object of it was, if Mr. and Mrs. Allensworth died first, it would come back to Mr. 'Ip' Allensworth, and in case Mr. 'Ip' Allensworth died, that it would be Mr. J. F. Allensworth's

during his life time, and at his death it would be his wife's, Mrs. Allensworth's, absolutely.

"Q. At the death of John F. Allensworth? A. Yes, sir; and that he would incorporate this in his will.

"Q. Was anything said about any interest on the note if he outlived them? A. If he outlived them, there would be no interest on the note."

Mrs. Webster's evidence is the same.

Mr. Leo M. Heiman testified he lived next door to John F. Allenworth in Evansville for five years and visited him frequently, that he saw Mr. Philipp H. Allensworth there a number of times, and during one evening in fall of 1922 he was there and Philipp was there, and that in the course of the conversation Philipp said:

"He had finally gotten the folks, Mr. John F. Allensworth and his wife to agree to come to Hopkinsville; he said he had told them he would give $10,000.00 and put it on the Sallee place, a little chicken farm, or small place over there of about fifteen or twenty acres, and that he would give that to Mr. John F. Allensworth during his lifetime, and at his death he would give it to Mrs. Carolyn Allensworth absolutely."

O. C. Hausserman testified he ran a meat market; that John F. Allensworth was a customer of his; Philipp frequently came to the market with John, and on one occasion when they were there together John told him he was going to leave him, and Hausserman asked him where he was going, and he told him Hopkinsville; the witness remarked he was leaving an awful good job, whereupon Philipp said: "He is taken care of all right," then went on to tell that he had put $10,000 into a place for him, that the money would be John's as long as he lived, and after John's death it would go absolutely to his wife. The witness was unable to fix the exact time further than this; that his wife went to Europe in the spring of 1922, traveled over that country and returned in the fall, and this was after her return.

Philipp H. Allensworth was a farmer and handled stock, he frequently was at Leavell's mule barn, and F. J. Ragsdale testifies:

"They were always after him about being so stingy, and one day Mr. Leavell says 'Come on, Ipp,

and go with me and get dinner, you are too stingy to buy one' and Ipp didn't go, and says, 'There is old Dick talking about me being stingy and tight, damned if I didn't give more money away the other day than he would ever give away' and I said, 'Who did you loosen up so to?' and he said he gave John $10,000.00, but he tied his property up so nobody could ever get it from John or his wife.''

Mr. Leavell does not in his evidence make a satisfactory denial of this.

Mrs. Annie Coffey testified that at some time before July, 1924, she visited Mr. and Mrs. John F. Allensworth, and Philipp H. Allensworth was there, and this is taken from her evidence:

"Mr. Ipp said he felt so bad at times he didn't think he was going to live long and that Mrs. Jessie O'Neal was trying to keep him from carrying out his agreement that he went into with Mr. J. F. Allensworth and Mrs. J. F. Allensworth to come to Hopkinsville, and live and he went over to the desk and sat down and wrote that the ten thousand dollar note that J. F. Allensworth gave him was never to be collected if he died before Mr. and Mrs. J. F. Allensworth, it was to be J. F. Allensworth's as long as he lived and at his death it was to be Mrs. J. F. Allensworth's absolutely to do as she pleased with, and no interest was to be charged, and signed his name.''

Miss Sadie Smith testified to the same thing and both of them testify they then read this paper. The evidence is that this paper was by John F. Allensworth put into a safety box at the bank. This paper cannot now be found. We shall have more to say about it later.

By Mr. A. H. Schor and Henry Faul, insurance men of Evansville, Ind., Theodore R. Troendle, a hotel keeper at Dawson Springs, with whom the Allensworths stopped, W. A. Glass, a fellow member with the Allensworths of a fishing club, and W. P. Ward, the lakekeeper of this club, testified to conversations with Philipp H. Allensworth and detail statements made by him that he had a contract with John F. Allensworth, by which John was induced to come to Hopkinsville, and they gave their accounts with such detail of circumstances as to give an air of verisimilitude to what they say. The

plaintiff introduced a deputy assessor who testified she took the assessment of the property of Philipp H. Allensworth and he did not want to assess this note because as he said he was getting no interest on it and never expected to collect it. There are over 2,300 pages of this record; we cannot discuss every thing but have, we believe, stated the substance of what the plaintiff proved.

The defendants, to overcome this, established that on November 10, 1922, Mr. John F. Allensworth made application to the International Harvester Company to be placed on the pension list of that Company, which was done, and on November 29, 1922, that company sent out the following circular letter to its employees.

"To our dealers and employees.

"It is with regret that we announce the retirement of Mr. John F. Allensworth, Branch Manager in charge of the Evansville, Indiana Territory, effective this date. Mr. Allensworth has rounded out a long term of continuous service with this Company and one of its predecessors, and now retires at his own request to enjoy well earned rest and recreation. Mr. P. Y. Timmons, formerly Assistant Branch Manager, succeeds Mr. Allensworth. We bespeak for Mr. Timmons that good and lively support you have accorded Mr. Allensworth, and for which we thank you."

The defendants introduced J. F. Jones, who testified he was manager for the domestic sales of the International Harvester Company, and he visited John F. Allensworth in 1922 just before he asked to be retired, and Jones said the purpose of his visit was to ask John F. Allensworth to retire because he was getting old and slowing down, but on cross-examination he was forced to admit that on September 20, 1922, his company had put out a bulletin showing sales made by fifteen branch agencies in the southern district, and this bulletin shows but two agencies where sales had been higher and showed twelve agencies where sales were lower than the Evansville agency of which John was manager. He also admitted,

"If John Allensworth hadn't applied for retirement, his condition would not have been such that we would have asked him to retire. . . . His application was welcome to me . . . although I

would not have asked John Allensworth to quit, or I would not have discharged him.''

Mr. I. B. Dawson, the district manager of this company, says he visited John F. Allensworth for the same purpose. Defendants stress very much the evidence of these two men, but it does not impress us at all. First John F. Allensworth was shown to be only fifty-nine years of age, and, as to his being overweight, the evidence thereabout indicates he weighed about 210 or 215 pounds and was a man above average height. Certainly his sales gave no reason for his discharge, and, if his discharge was determined on, we can see no reason ;why it was necessary to send two high-salaried officials all the way from Chicago to accomplish it; why not send one, or why not write him a letter, or if in a hurry, it would have cost but little to telegraph him. This is not very impressive, and we are persuaded that the plaintiff's account of the visit of these men is true; that is, that they came to try to dissuade John F. Allensworth from resigning, though in subsequent depositions they most emphatically deny that. Average reasonable men would not have pursued the course they did. All of this matter of resigning or being discharged is unimportant. Suppose the evidence showed conclusively that he had been discharged, that would not prevent Philipp H. Allensworth from making ;with him the contract he is alleged to have made or make that contract if fully established any less obligatory.

From the reading of this record one gets the impression that Philipp H. Allensworth was a man whose delight it was to prate and boast of his benevolences, and the probative effect of these statements relative to this $10,000 is weakened by their very numerosity. With the possible exception of the statement to Miss Messick and her mother, there is not one of them that cannot be so accounted for. John F. Allensworth knew him perfectly and of course understood him, and, if so, then these statements, if not made in earnest and understood by John not to have been made in earnest, cannot be made the basis of a contract. See Smith v. Richardson, 104 S. W. 705, 31 Ky. Law Rep. 1082; 13 C. J. p. 287, sec. 94. These statements may have been made in earnest and in all seriousness, they may have been made in boast, or they may have been made to help John F. Allensworth save his face by giving the appearance that he was leaving Evansville and his employment because

of the attractive inducement made him. We can best discover how John F. Allensworth regarded them by noting and studying what he did.

First he gave Philipp a note for this $10,000, which we have copied above, which is just about as absolute in its terms as a note could be made and does not connotate the existence of such a contract as the one asserted. Both of these brothers were good business men; John had had almost thirty years experience with the most successful corporations of this country. He knew and understood how business should be conducted, and as a reasonable business man would not have signed such a note if he then had with Philipp such a contract as the one asserted here. Men are supposed to act reasonably and naturally, and, if he understood Philipp's talk to be serious and not in boast, he would have insisted upon the insertion in this note of a few words that would have given effect to the contract now asserted. After the death of Philipp, John learned and we are sure his wife, the plaintiff, learned, Philipp had not made in his will the provisions he had made in his boasts, yet John qualified as the executor of Philipp's will, and not only said and did nothing to indicate he had such a contract as is here asserted, but actively so conducted himself as to indicate this note was a valid and binding obligation that should be paid.

John signed and filed with the state tax commission a report made for the purpose of enabling that commission to determine the extent of Philipp's estate and the amount of inheritance tax due thereon, and in this report he gives a list of the notes due the estate, and this $10,000 note heads the list. John lived for nearly two years thereafter and in all that time did not one thing to indicate the existence of such a contract as is here asserted, nor did the plaintiff. It may be urged the plaintiff could do nothing then because her interest in this $10,000 was subject to defeat by her death before that of John, and it may be said that both she and John were relying upon the written evidence of this contract which it is claimed Philipp signed and gave to John and which John placed in this bank box. We are not impressed at all by the first suggestion, for John F. Allensworth did not die suddenly or unexpectedly. He knew of his approaching dissolution, and prepared therefor by making his will 77 days before he died. There was nothing to prevent the plaintiff from bringing then a suit to determine her rights

after Philipp died. See Boggess v. Crail, 224 Ky. 97, 5 S. W. (2d) 906. She would then have had the advice and assistance of her husband, and the only excuse she could urge for her nonaction is that she and John were relying upon the writing alleged to have been made and signed by Philipp, so we come now to a consideration of it. No one knows where that paper is; Miss Sadie Smith and Mrs. Coffee tell us of its execution and existence and that they saw it in John F. Allensworth's bank box, after the death of Philipp.

Judge Douglas Bell qualified as executor of John F. Allensworth, and his notes and papers went into the hands of Bell. Shortly thereafter Mrs. Carolyn Allensworth began this suit and made him and Mrs. O'Neal defendants. Judge Bell died and left these two women, the only parties interested in this litigation, for after the death of Judge Bell and after and over the objections of Mrs. O'Neal, Carolyn Allensworth was appointed administratrix de bonis non with the will annexed of John F. Allensworth. After much difficulty she finally got the key to his bank box. Who had had this key cannot from this record be satisfactorily determined. When John's bank box was opened, nothing of any value was found therein. This writing alleged to have been signed by Philipp and notes belonging to the estate of John F. Allensworth could not be found, but, in response to a rule against them, Mr. George Long of the First National Bank and Mrs. Jessie O'Neal appeared in court and produced the notes. Mrs O'Neal stoutly denied having had access to the bank box of her brother John, but the production of these notes makes it look much like she had. There was evidence she had had the key to this box, but she denied that, and it required not only this key but the master key of the bank to give her access to this box, and the evidence of those connected with the bank is that she did not have access to this box.

This writing, if ever made and signed, was not a new contract, but just another evidence of the same contract concerning which we have already said so much. Whether it ever existed or not, just like whether the contract itself ever existed or not, is not established with that degree of certainty which we would like to see. The same acts and conduct of John F. and Carolyn Allensworth that induce us to believe the asserted contract was never made lead us to believe this alleged writing never existed. There is always a presumption in favor of the

finding of the chancellor which an appellant must over-come, and we are unable to find in this record enough to convince us his finding was erroneous.

The judgment is affirmed.